**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| QUINCY VAUGHN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )        No. 4:21-cv-00718-HEA |
| | ) |
| MARK WALLACE, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter comes before the Court on the motion of plaintiff Quincy Vaughn for leave to commence this civil action without prepayment of the required filing fee. (Docket No. 2). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will assess an initial partial filing fee of $11.50. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against Mary Unknown, Heather Turner, and Unknown Williams. However, the Clerk of Court will be directed to issue process on Mark Wallace and Unknown Simonton in their individual capacities as to plaintiff's retaliation claim.

**28 U.S.C. § 1915(b)(1)**

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month

period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of the Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion for leave to proceed in forma pauperis, plaintiff has submitted a copy of his certified account statement. (Docket No. 5). The account statement shows an average monthly deposit of $57.50. The Court will therefore assess an initial partial filing fee of $11.50, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

2

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff is a self-represented litigant who is currently incarcerated at the Eastern Reception, Diagnostic, and Correctional Center (ERDCC) in Bonne Terre, Missouri. On June 17, 2021, he filed a civil rights action pursuant to 42 U.S.C. § 1983. (Docket No. 1). The complaint is handwritten on a Court-provided form. Plaintiff names as defendants COI Mark Wallace, COI Unknown Simonton, Nurse Mary Unknown, Functional Unit Manager Heather Turner, and Caseworker Unknown Williams. (Docket No. 1 at 2-3; Docket No. 1-1 at 4-12). Defendants are sued in both their official and individual capacities.

In his complaint, plaintiff asserts that on June 11, 2020, he was sleeping in his cell when he was awoken by Officer Wallace. (Docket No. 1-1 at 1). According to plaintiff, Officer Wallace

3

asked plaintiff if he wanted a shower. Plaintiff refused, but Officer Wallace tried to convince him to shower, allegedly because Wallace "wanted to see [plaintiff's] naked body."

Plaintiff states that he tried to get the shift supervisor to come to his wing so that he could file a Prison Rape Elimination Act (PREA) report on Officer Wallace. However, Officer Wallace "refused to go get his supervisor all night long."

At breakfast the following morning, plaintiff again requested a shift supervisor. Instead, when he was picking up his breakfast tray, Officer Wallace provided him with two PREA statement forms ten minutes before Wallace's shift change.

That day, plaintiff was moved to a different wing. When Officer Wallace returned that night, plaintiff's cellmate obscured plaintiff from view. Officer Wallace came to plaintiff's cell and opened the food-port, at which point plaintiff states that he "refused to allow [Wallace] to close it" until Wallace got the shift supervisor, so that plaintiff could file a PREA report against Wallace for his sexual comments. (Docket No. 1-1 at 1-2). Officer Wallace allegedly told plaintiff: "Keep playing…You bet not eat your snack bags at breakfast." (Docket No. 1-1 at 2; Docket No. 1-1 at 4).

When the sergeant came to take plaintiff's PREA report against Officer Wallace, plaintiff advised the sergeant that this was his second such complaint. (Docket No. 1-1 at 2). Plaintiff also advised the sergeant that he was supposed to be separated from Officer Wallace "to prevent [retaliation]."

Soon after filing his PREA report, Officer Simonton fed plaintiff his breakfast and gave him his medically-necessitated snack bags. According to plaintiff, these snack bags had been taken "off camera to the back office every morning," where staff allegedly did "inhumane things" to them. (Docket No. 1-1 at 5). He also asserts that Officer Wallace directed Officer Simonton to give

4

him "contaminated" food. Plaintiff apparently consumed this food. (Docket No. 1-1 at 2). When he woke up the next morning, the "entire left side of [his] jaw and left side of [his] tongue was covered in welts and blisters." Plaintiff states that the welts and blisters hurt and burned. To this day, he states that "the blisters come and go."

When the welts had not subsided "[a]fter a day or so," plaintiff "declared a medical emergency during med pass." Nurse Mary Unknown made note of the welts and blisters on his tongue. She allegedly told plaintiff that "she was going to put [him] in for an urgent referral to see the dentist," but never submitted it. Plaintiff states that when meeting with Nurse Mary Unknown, he advised her of what had taken place with Officer Wallace and Officer Simonton. (Docket No. 1-1 at 7).

Ultimately, plaintiff was seen by the dentist within a month or two, after his father called the prison. By that point, plaintiff's "injuries…had disappeared," though he states that they have "resurfaced multiple times." (Docket No. 1-1 at 3). Since that dental appointment, he has seen the dentist twice more, but the welts were never present. Due to the absence of welts, plaintiff asserts that he has not been scheduled for an "outside dentist visit so that [his] tongue could be looked at with the proper microscopic equipment." (Docket No. 1-1 at 7-8).

With regard to FUM Turner, plaintiff states that he sent Turner "multiple letters" in order to get copies of his IRR, grievance, and grievance appeal. (Docket No. 1-1 at 9). Plaintiff wanted these documents because he felt they gave "strong support to [his] claim." Despite his requests, plaintiff states that FUM Turner has "utterly refused to print them out." (Docket No. 1-1 at 10). Plaintiff insists that FUM Turner's actions amount to interference with his 42 U.S.C. § 1983 claim.

Likewise, plaintiff accuses Caseworker Williams of also refusing to give him copies of his IRR, grievance, and grievance appeal. (Docket No. 1-1 at 12). According to plaintiff, Caseworker

Williams advised plaintiff that it was not his job to make him copies. Indeed, plaintiff acknowledges that the grievance officer gives free copies of these documents "upon signing for the grievance or grievance appeal." Nevertheless, plaintiff states that he does not have access to the grievance officer, and that Caseworker Williams has the ability to retrieve his grievance records in his database. As with FUM Turner, plaintiff deems Caseworker Williams's actions to be interference with his 42 U.S.C. § 1983 claim.

Attached to plaintiff's complaint are three exhibits.[1] The first is an affidavit authored by plaintiff complaining generally about the alleged obstruction of the grievance process faced by inmates at the ERDCC. (Docket No. 1-2). The second exhibit is a "declaration" authored by plaintiff in which he contends that he was not allowed to grieve the issue that forms the basis of this complaint. (Docket No. 1-3). The third exhibit is an affidavit by inmate William Burgess regarding his opinion that inmates are being denied access to the courts. (Docket No. 1-4).

The Court notes that plaintiff has left the "injuries" section of the form complaint blank. (Docket No. 1 at 4). Based on his allegations, it appears that plaintiff has suffered from welts and blisters in his mouth. He does not indicate that he is seeking any monetary damages, but requests "to be sent to an outside ears/nose/mouth [specialist] who does not work within the prison for prognosis and diagnosis." (Docket No. 1 at 5).

Along with his complaint, plaintiff also filed a document construed as a motion for preliminary injunction. (Docket No. 4). Plaintiff states that he seeks an injunctive order because snack bags and certified religious diet (CRD) bags are always "taken off camera" and then "taken

---

[1] The Court will treat these attachments as part of the pleadings. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes"). *See also Pratt v. Corrections Corp. of America*, 124 Fed. Appx. 465, 466 (8th Cir. 2005) (explaining that "the district court was required to consider the allegations not only in [plaintiff's] pro se complaint, but also in his motion to amend, his response to defendants' motion to dismiss, and the attachments to those pleadings").

to the back office where staff members do inhumane things" to them.  (Docket No. 4 at 1). He explains that this is how Officer Wallace and Officer Simonton were able to contaminate his snack bag.

After Officer Wallace and Officer Simonton allegedly "conspired to harm [him]," plaintiff spoke with Captain Henson, who agreed that food was not supposed to be tagged with an inmate's name, and was not supposed to be taken to the back office. (Docket No. 4 at 2). Plaintiff states that the practice stopped for thirty days following his conversation with Captain Henson. (Docket No. 4 at 2-3). Once that thirty-day period was over, though, an officer identified as COIII Finwick came to the unit and said that "food would continue going to the back office." (Docket No. 4 at 3).

According to plaintiff, he faces a threat of irreparable harm if this practice is not stopped, especially when defendants "get wind of this lawsuit." Plaintiff states that "[t]here is no doubt this is happening now," and that it is "going to get much worse if they feel like they can get away with it." He further notes that he is still on his snack bags, as well as a CRD, and that he is "sincerely in fear of [his] life." (Docket No. 4 at 3-4).

In the motion, plaintiff seeks an injunctive order keeping staff from taking CRDs and snack bags to the back office. (Docket No. 4 at 1-2). He also asks that "cameras be placed under the porch of housing unit 2 where the food can be monitored." (Docket No. 4 at 4).

On July 27, 2021, plaintiff filed a document construed as a motion for a temporary restraining order. (Docket No. 6). In the motion, plaintiff states that Caseworker Williams intentionally intercepted his lawsuit from the mailroom. (Docket No. 6 at 1-2). Plaintiff also asks "for a TRO [to be] placed against" Officer Wallace and Officer Simonton. (Docket No. 6 at 2). He asserts that since the filing of this lawsuit, Officer Wallace and Office Simonton have "made it a point to feed [him his] CRD and snack bags." He states that those CRDs and snack bags have been

taken off camera, "which is against policy and procedure." (Docket No. 6 at 2-3). Plaintiff asserts that he has "to throw [his] snack bags away due to their inconspicuous harassment since the filing of this claim." (Docket No. 6 at 3).

Plaintiff also alleges harassment by the medical staff. He contends that he was poisoned by a med tech when he was issued his Neurontin. To support this accusation, plaintiff states that his heart began to flutter after taking it, and that he experienced "excruciating pain." Plaintiff concludes that the med tech either "purposely tried killing [him] by overdosing [him]," or placed "something [poisonous] in [his] meds." Following this incident, plaintiff acknowledges that an EKG was done, but no other diagnostic tests. (Docket No. 6 at 4).

Beyond this purported poisoning, plaintiff asserts that he injured himself while doing burpees. (Docket No. 6 at 3-4). He states that he does not know the severity of his injury, but that he cannot lift his arm above his head. (Docket No. 6 at 4). Plaintiff alleges that he "cannot get any medical attention" for his shoulder injury. In particular, he notes that Nurse Mary Unknown indicated to him that a referral was made for him to see the nurse practitioner. (Docket No. 6 at 4-5). A different nurse, however, advised him that he would not be receiving an appointment. (Docket No. 6 at 5).

Plaintiff states that his "life is in danger for filing these petitions within the courts." He also asserts that he has been retaliated against and cannot get proper medical care. He seeks the aforementioned TRO against Officer Wallace and Officer Simonton, as well as transfer to another prison.

### Discussion

Plaintiff is a self-represented litigant who brings this civil action pursuant to 42 U.S.C. § 1983, alleging the violation of his constitutional rights as a result of a contaminated snack bag.

Because plaintiff is proceeding in forma pauperis, the Court reviewed his complaint under 28 U.S.C. § 1915. Based on that review, and for the reasons discussed below, the Court will dismiss the official capacity claims against all defendants, as well as the individual capacity claims against Nurse Mary Unknown, FUM Turner, and Caseworker Williams. However, the Clerk of Court will be directed to issue process on Officer Wallace and Officer Simonton in their individual capacities as to plaintiff's retaliation claim.

## A.  Official Capacity Claims Against Officer Wallace, Officer Simonton, FUM Turner, and Caseworker Williams

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Here, Officer Wallace, Officer Simonton, FUM Turner, and Caseworker Williams appear to be employees of the Missouri Department of Corrections. As such, the official capacity claims against them are actually claims against the State of Missouri itself, their employer. Thus, to prevail on these claims, plaintiff must establish the state's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075.

While a plaintiff cannot maintain a 42 U.S.C. § 1983 claim against a state official for money damages, such a claim is permissible when the plaintiff is seeking prospective injunctive relief. *See Kruger v. Nebraska*, 820 F.3d 295, 301 (8th Cir. 2016) (stating that "a state is not a person for purposes of a claim for money damages under § 1983"); and *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment"). As mentioned above, plaintiff does not seem to be seeking money damages. Instead, he requests an order that he be taken to an outside medical specialist. Since he is seeking injunctive relief, it is possible to state a § 1983 claim against the state officials in this case, as long as he can demonstrate the state's liability for the alleged conduct.

Nothing in the complaint, however, gives any indication that the state itself is liable for the alleged violation of plaintiff's constitutional rights. That is, plaintiff has not presented any facts showing that the actions of the defendants in this case were attributable to an official policy, custom, or failure to train by the State of Missouri. *See Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (explaining that to prevail on a claim against a governmental entity, plaintiff must show that the constitutional violation resulted from (1) an official policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise). Rather, plaintiff's facts consist solely in recounting the individual actions of each of the defendants. To the extent that policy is mentioned in the complaint, it is in the context of plaintiff alleging that defendants violated policy, not that such a policy was unconstitutional.

For these reasons, plaintiff has failed to state official capacity claims against Officer Wallace, Officer Simonton, FUM Turner, and Caseworker Williams. Therefore, these claims must be dismissed.

**B. Official Capacity Claim Against Nurse Mary Unknown**

Though plaintiff does not provide Nurse Mary Unknown's employer, it appears that she works for Corizon, which is a private company contracted by the Missouri Department of Corrections to provide healthcare to inmates. As noted above, an official capacity claim against an individual is actually a claim against the entity employing that person. *See Johnson*, 172 F.3d at 535.

"A corporation acting under color of state law cannot be liable on a respondeat superior theory." *Smith v. Insley's Inc.*, 499 F.3d 875, 880 (8th Cir. 2007). Rather, to support a claim against such a corporation, the plaintiff "must show that there was a policy, custom, or official action that inflicted an actionable injury." *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006). *See also Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975 (8th Cir. 1993) (stating that a corporation acting under color of state law will only be held liable where "there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983"); and *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (explaining that the "proper test" for determining whether a corporation acting under color of state law is liable under 42 U.S.C. § 1983 "is whether there is a policy, custom, or action by those who represent…official policy that inflicts injury actionable under § 1983").

Here, as with the state employees, plaintiff has provided no facts demonstrating that he suffered an injury due to a policy, custom, or official action on the part of Corizon. In fact, the only allegation he presents is the assertion that Nurse Mary Unknown was going to refer him to a dentist but never did. There is no indication that this lack of a referral stemmed from a policy, custom, or official action, or even that it was anything but a mistake. Regardless, elsewhere in the complaint, plaintiff notes that he has been seen by a dentist at the ERDCC on several occasions.

11

Thus, he is clearly receiving healthcare. While he insists that he should be seen by an outside dentist, he provides no facts to establish that the care he is currently receiving is constitutionally deficient, or that his complaint is anything more than a disagreement with a treatment decision. As plaintiff has failed to state a claim against Corizon, the official capacity claim against Nurse Mary Unknown must be dismissed.

## C.  Individual Capacity Claims

Aside from suing defendants in their official capacities, plaintiff has also brought individual capacity claims against Nurse Mary Unknown, Officer Wallace, Officer Simonton, FUM Turner, and Caseworker Williams. With regard to individual capacity claims, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019).

### i.  Nurse Mary Unknown

Plaintiff accuses Nurse Mary Unknown of deliberate indifference to his medical needs. Under the Eighth Amendment, the government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate

constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). *See also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995).

To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). As such, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

In this case, plaintiff states that Nurse Mary Unknown violated his constitutional rights because she did not put him "in for a[n] emergency referral to be seen by the dentist." This assertion, in and of itself, is not sufficient to demonstrate that Nurse Mary Unknown's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." To begin, plaintiff does not establish that he suffered from a serious medical need. While he

initially notes that he suffered from painful welts and blisters in his mouth, he also states that they went away. Plaintiff provides no facts as to how long this condition lasted, whether he suffered any other symptoms, such as a fever, or whether the welts made it difficult to eat or breathe. In other words, while describing this as an "emergency" situation, he provides no support for that conclusion.

More fundamentally, he provides no facts to show that Nurse Mary Unknown's failure was deliberate, rather than a mistake or an oversight. He describes only one interaction with Nurse Mary Unknown, and nothing about that interaction demonstrates an intent on her part to deny plaintiff's needs. To the contrary, as plaintiff acknowledges, Nurse Mary Unknown told him that she would put in a referral for a dentist. That the referral was apparently not made does not, without further factual enhancement, establish that Nurse Mary Unknown acted with "a highly culpable state of mind approaching actual intent." For example, there is no indication that plaintiff asked Nurse Mary Unknown several times, and that she kept putting him off or refusing him treatment. At most, plaintiff's allegations describe negligence or malpractice, which is not actionable under 42 U.S.C. § 1983. *See Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 499 (8th Cir. 2008) (stating that medical malpractice is not actionable under the Eighth Amendment).

For these reasons, plaintiff's deliberate indifference claim against Nurse Mary Unknown in her individual capacity must be dismissed.

### ii. FUM Turner and Caseworker Williams

Plaintiff alleges that FUM Turner and Caseworker Williams refused to give him copies of his IRR, grievance, and grievance appeal. According to plaintiff, he needed these documents to bolster his 42 U.S.C. § 1983 claims.

An inmate has a liberty interest in the nature of his confinement, but not an interest in the procedures by which the state believes it can best determine how he should be confined. *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996). As such, "there is no constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations." *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003). To that end, a prison grievance procedure is a procedural right only and does not confer upon an inmate a substantive right. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). *See also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (agreeing with district court that "defendants' denial of [plaintiff's] grievances did not state a substantive constitutional claim"); and *Fallon v. Coulson*, 5 F.3d 531, 1993 WL 349355, at *1 (8th Cir. 1993) (unpublished opinion) (stating that the failure of defendants "to acknowledge receipt of and respond to plaintiffs' grievances pursuant to prison procedure did not violate any of plaintiffs' constitutional rights").

As noted above, plaintiff accuses FUM Turner and Caseworker Williams of refusing to give him copies of an earlier IRR, grievance, and grievance appeal. However, a prison's grievance procedure does not provide plaintiff with a substantive right. Because plaintiff has no right to a grievance process, it follows that he also does not have a right to copies of the IRR, grievance, or grievance appeal generated by that process. Therefore, he has not stated a constitutional violation against either FUM Turner or Caseworker Williams. As such, the individual capacity claims against them must be dismissed.

To the extent that plaintiff alleges that FUM Turner and Caseworker Williams interfered with his attempts to file a 42 U.S.C. § 1983 claim, he has not sufficiently alleged that he was denied access to the courts. The Supreme Court has stated that it is "established beyond doubt that prisoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821

(1977). This right requires that prisons provide "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish [that] the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831 (8th Cir. 2008). In order to prove actual injury, the plaintiff must demonstrate that a nonfrivolous legal claim has been frustrated or is being impeded. *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007).

Here, plaintiff has not shown that he has been denied the opportunity to litigate a claim regarding his conditions of confinement. In point of fact, he has demonstrated the opposite, as he has filed his complaint in this Court, along with several motions. While plaintiff protests his inability to get copies of his IRR, grievance, and grievance appeal, which he states will "give strong support to [his] claim," there is no indication that this inability has kept him from presenting his allegations to the Court. That is, plaintiff is able to present his facts to the Court without reference to past complaints he made to prison officials. Furthermore, as noted above, plaintiff has no constitutional right to the copies he has requested. Thus, it cannot be said that the failure to provide these copies has frustrated or impeded plaintiff in a way that is violative of the constitution. For this reason as well, the individual capacity claims against FUM Turner and Caseworker Williams must be dismissed.

### iii.    Officer Wallace and Officer Simonton

Plaintiff has alleged that Officer Wallace and Officer Simonton worked in concert to retaliate against him for making a PREA report against Wallace. As a general matter, the First

Amendment prohibits government officials from retaliating against an individual for speaking out. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006). In order to prevail on a First Amendment retaliation claim, a plaintiff "must show that [he] engaged in protected activity, that the [defendant's] actions caused an injury to the [plaintiff] that would chill a person of ordinary firmness from continuing to engage in the activity, and that a causal connection exists between the retaliatory animus and the injury." *Small v. McChrystal*, 708 F.3d 997, 1008 (8th Cir. 2013).

Retaliation does not need to be the "sole motive" in taking an action against the plaintiff, but it must have been a "substantial factor" in the decision. *Kilpatrick v. King*, 499 F.3d 759, 767 (8th Cir. 2007). Furthermore, the plaintiff must demonstrate that the retaliatory motive was a "but-for" cause of the action. *Baribeau v. City of Minneapolis*, 596 F.3d 465, 481 (8th Cir. 2010). *See also Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007) (explaining that "[i]f there is a finding that retaliation was not the but-for cause…the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind"). That is, plaintiff must show that he was "singled out" because of his exercise of constitutional rights. *Baribeau*, 596 F.3d at 481. *See also Bernini v. City of St. Paul*, 665 F.3d 997, 1007 (8th Cir. 2012) (stating that to establish a causal connection, the plaintiff must show that he was "singled out" because of his exercise of constitutional rights).

In this case, plaintiff alleges that he made two PREA complaints against Officer Wallace for inappropriate sexual comments. While making the second complaint, plaintiff states that Officer Wallace threatened him by telling him not to eat his snack bag. A short time later, Officer Simonton gave him a snack bag that plaintiff claims was contaminated. After eating the contents, he apparently got blisters and welts in his mouth. Plaintiff further states that his snack bag was taken off camera to an office before being served to him, and that this was against proper

procedure. The Court must accept these allegations as true, and make all reasonable inferences in plaintiff's favor. *See Jones v. Douglas Cty. Sheriff's Dep't*, 915 F.3d 498, 499 (8th Cir. 2019). As such, for purposes of initial review, plaintiff has sufficiently alleged that Officer Wallace and Officer Simonton took adverse action against him for engaging in a protected activity. Therefore, the Clerk of Court will be directed to issue process on defendants Wallace and Simonton in their individual capacities.

### D.  Motion for Preliminary Injunction

Plaintiff has filed a document construed as a motion for a preliminary injunction. (Docket No. 4). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 557 U.S. 7, 27 (2008). In determining whether to grant a preliminary injunction, a district court applies "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015). *See also Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986).

In the prison context, a request for injunctive relief must always be viewed with great caution because "judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995). For an injunction to issue, "a right must be violated," and the court must determine whether "a cognizable danger of future violation exists." *Id*. at 521. Furthermore, the "danger must be more

than a mere possibility." *Id*.  Regarding the issue of whether a situation is ripe for injunctive relief, the Eighth Circuit has noted that courts "should not get involved unless either a constitutional violation has already occurred or the threat of such a violation is both real and immediate." *Id*. Plaintiff has the burden of proving that an injunction should be issued. *See Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019).

In his motion, plaintiff seeks an injunctive order to stop snack bags and CRDs from being taken off camera, and to have additional cameras placed in the housing unit so that food can be monitored. To support this request, plaintiff alleges that the "illegal practice" of taking snack bags and CRDs off camera has continued since the filing of his complaint.

Plaintiff has not carried his burden of demonstrating that injunctive relief is warranted. Specifically, he has not demonstrated the threat of irreparable harm. While plaintiff claims that he is "sincerely in fear of [his] life," he presents no facts to demonstrate that prison officials are systematically contaminating snack bags or CRDs. For example, plaintiff does not allege any reoccurrence of the incident whereby he ate a "contaminated" snack bag, and then developed welts in his mouth. Balanced against plaintiff's failure to demonstrate irreparable harm is the potential harm that might result from the Court attempting to insert itself into issues of prison administration, based on plaintiff's vague allegations. Therefore, plaintiff's motion for a preliminary injunction is denied.

### E.  Motion for a Temporary Restraining Order

Plaintiff has also filed a document that has been construed as a motion for a temporary restraining order (TRO). (Docket No. 6). The standards applicable to a TRO are the same as those applied to a request for a preliminary injunction. *See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project*, 877 F.2d 707, 708 (8th Cir. 1989) (affirming district court's application of *Dataphase*

factors to a motion for a temporary restraining order). As noted above, those standards consist of "a flexible consideration of (1) the threat of irreparable harm to the moving party; (2) balancing this harm with any injury an injunction would inflict on other interested parties; (3) the probability that the moving party would succeed on the merits; and (4) the effect on the public interest." *St. Louis Effort for AIDS*, 782 F.3d at 1021. *See also Dataphase Systems, Inc.*, 640 F.2d at 113. "None of these factors by itself is determinative; rather, in each case the four factors must be balanced to determine whether they tilt toward or away from granting a preliminary injunction." *West Pub. Co.*, 799 F.2d at 1222.

In his motion, plaintiff asserts a number of different allegations, some of which are unconnected to his complaint. The allegations are not sufficient to carry his burden of demonstrating he is entitled to a TRO.

First, plaintiff states that unidentified prison officials have been "tampering with [his] legal mail," and that Caseworker Williams intercepted the instant lawsuit from the mail room. This does not demonstrate irreparable harm. Indeed, it does not state any harm at all. Plaintiff does not explain what he means when he says that his mail has been tampered with, or what the consequences were of Caseworker Williams "intercepting [his] lawsuit." To the extent that plaintiff believes that the filing of his lawsuit has been hindered, the Court can only note that he has been able to successfully submit a complaint and four separate motions, and that there is no indication that he has been unable to get anything on file.

Second, plaintiff asks "for a TRO [to] be placed against" Officer Wallace and Officer Simonton. To support this request, he states that both officers have continued to feed him his CRDs and snack bags, which plaintiff throws away. This does not establish a risk of irreparable harm, as plaintiff has not alleged a reoccurrence of the incident in which he purportedly consumed a

20

contaminated snack bag. He implies that all his snack bags and CRDs are contaminated, since they have been "off of camera," but this belief is not supported by any factual allegations.

Third, plaintiff accuses a med tech of trying to kill him by giving him "poisoned" Neurontin. This claim fails because it is not related to the claims in his complaint. Specifically, plaintiff presents no facts connecting the med tech to the retaliation of which he has previously complained. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (explaining that "a party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint"); and *Hale v. Wood*, 89 F.3d 840, 1996 WL 341206, at *1 (8th Cir. 1996) (unpublished opinion) (rejecting plaintiff's request for injunctive relief because he "failed to establish a connection between these injuries and the conduct he challenged in his complaint"). Furthermore, plaintiff has entirely failed to support this startling accusation with any facts whatsoever. There is not a single allegation that tends to demonstrate that the med tech tried to kill plaintiff, either by poisoning his medication or giving him an overdose. Without such facts, plaintiff cannot show that he is at risk of irreparable harm and entitled to injunctive relief.

Similarly, plaintiff's assertion that his shoulder injury is not being treated fails, because it is not connected with the retaliation claim in his complaint. Additionally, plaintiff's ambiguous statement that he "cannot get any medical attention" for his shoulder is not enough to establish the necessity of a TRO to prevent irreparable harm.

In short, plaintiff's motion for a TRO is premised on his belief that he is being systematically retaliated against because of his initial PREA reports against Officer Wallace. There are no facts, however, indicating that the medical staff have somehow conspired with Officer Wallace to deny plaintiff medical care. There are also no facts in the motion supporting the

proposition that Officer Wallace and Officer Simonton have continued to act in such a way as to place plaintiff at risk for harm. For these reasons, the motion must be denied.

### F. Motion to Appoint Counsel

Plaintiff has filed a motion to appoint counsel. (Docket No. 3). In civil cases, a pro se litigant does not have a constitutional or statutory right to appointed counsel. *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013). Rather, a district court may appoint counsel in a civil case if the court is "convinced that an indigent plaintiff has stated a non-frivolous claim…and where the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel." *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018). When determining whether to appoint counsel for an indigent litigant, a court considers relevant factors such as the complexity of the case, the ability of the pro se litigant to investigate the facts, the existence of conflicting testimony, and the ability of the pro se litigant to present his or her claim. *Phillips v. Jasper Cty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006).

After reviewing these factors, the Court finds that the appointment of counsel is not warranted at this time. Plaintiff has demonstrated, at this point, that he can adequately present his claims to the Court. Additionally, neither the factual nor the legal issues in this case appear to be complex. The Court will entertain future motions for appointment of counsel as the case progresses.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $11.50 within **twenty-one (21) days** of the date of this order. Plaintiff is instructed to make his remittance

payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel (Docket No. 3) is **DENIED** at this time.

**IT IS FURTHER ORDERED** that plaintiff's motion for preliminary injunction (Docket No. 4) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for a temporary restraining order (Docket No. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that the official capacity claims against all defendants are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the individual capacity claims against defendants Mary Unknown, Heather Turner, and Unknown Williams are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of partial dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue on defendants Mark Wallace and Unknown Simonton in their individual capacities as to plaintiff's claims of retaliation. Defendants shall be served with process in accordance with the waiver agreement the Court maintains with the Missouri Attorney General's Office for service on Missouri Department of Corrections Employees.

**IT IS FURTHER ORDERED** that an appeal from this partial dismissal would not be taken in good faith.

Dated this 30th  day of July , 2021.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE

24